UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>James Abraham and Dana Abraham</u>

     v.                            Civil No. 11-cv-329-JD
                                      Opinion No. 2011 DNH 158

<u>Allen Mello Dodge, Inc.</u>


O R D E R

James Abraham ("Jim") and Dana Abraham ("Dana"), who are
husband and wife, brought suit against their former employer,
Allen Mello Dodge, Inc., alleging employment discrimination under
state and federal law.  Allen Mello Dodge moves to sever Jim's
claims from Dana's claims on the ground that they were improperly
joined.  Jim and Dana object, contending that Jim's claims and
Dana's Americans with Disabilities Act claim arise out of Allen
Mello Dodge's reaction to Jim's mental disability.


Background[1]

Allen Mello Dodge, Inc. ("Dealership") is a Chrysler
dealership in Nashua, New Hampshire.  Jim Abraham worked there
for twenty-nine years, from January of 1980 until June 23, 2009,
and served as Vice President and General Manager beginning in

---

[1]The background information is taken from the complaint.

1993 and until he left.  Dana worked for the Dealership from 1985 until October 2, 2009, first as leasing manager and later as a sales manager.

Jim had a close working and personal relationship with the founder and manager of the Dealership, Allen C. Mello ("Mello"). Mello's son, Allen Jr., was a manager at the Dealership.  Jim's brother, Ed Abraham, also worked at the Dealership.

After falling off his roof while shoveling snow in January of 2002, Jim began to experience anxiety attacks and other mental health symptoms.  When Jim reported his symptoms to his physician, the physician suspected bipolar disorder.  Jim was referred to a psychiatrist who diagnosed depressive disorder and anxiety disorder.  By 2003, the psychiatrist modified his diagnosis to include a suspicion of bipolar disorder.

Despite treatment, Jim continued to experience symptoms that interfered with his ability to do even basic activities such as getting dressed and leaving the house in the morning.  Dealership employees noticed that Jim had changed.  While Mello was in Florida during the winter of 2003, Mello stopped communicating with Jim because of the changes he had noticed and, instead, communicated with Jim's brother, Ed.  Upon his return to New Hampshire, Mello found that Jim remained depressed and, as a result, he met with Jim less frequently.  Jim explained his

2

condition and treatment to Mello, who discounted the value of
therapy based on his own experiences.

While Jim was in a manic phase, he asked the Dealership to
liquidate his retirement plan.  He also chose particularly fast
cars as his company car and had several accidents.  Officers of
the Dealership talked to Dana about Jim's condition.  On one
occasion, Dana was crying at work because of Jim's condition and
told a co-employee about Jim's diagnosis.  Jim's treatment
continued with several different specialists.  His symptoms ebbed
and waned.

In June of 2009, Jim entered a second period of hypermania,
which caused him to work night and day and to sleep very little.
At that time, Chrysler had declared bankruptcy, and it was well
known that many dealerships would be closed.  Jim was working on
a business plan for the Dealership to profit from the situation.
Other employees noticed Jim's manic behavior.  One of the
Dealership's sales managers, James Kacavas, approached Jim and
told him that he needed to be hospitalized.  Kacavas repeated his
conversation with Jim to Dana on the same day.

During a meeting with Mello, Jim said that he felt he was
beginning to crack under the pressure of work.  Jim said that he
thought other employees were noticing his behavior.  Jim began to
cry and asked Mello if he thought Jim was going crazy.  Mello

3

urged Jim to keep working and to ignore negativity from other employees.

On June 19, 2009, Mello called Dana into his office to discuss Jim's condition.  Mello said that it was obvious something was wrong with Jim.  Dana explained that Jim was having an episode as part of his illness and that the family was urging him to get medical attention.  Mello told Dana that Jim had said he had stopped taking medication, that he was smoking cigars for relaxation, and that he had asked to smoke cigars in company vehicles, which was forbidden.  Mello thought Jim had lost his mind to suggest smoking in a company car.  Dana asked Mello to give her time to get help for Jim and not to terminate his employment.

Dana was angry that Jim had stopped taking his medication and told him that she was afraid he would lose his job.  Jim confronted Mello about telling Dana that he had stopped taking his medication.  Jim believed that Dana and Mello were collaborating against him.

On Monday, June 21, 2009, Jim drafted a letter that said his "automotive career" would come to an end at the close of business on June 30, 2009.  Dana begged Jim not to submit the letter.  Jim met with Mello later on Monday, asking whether he could reduce his work hours because of his symptoms.  Mello responded by

asking Jim if he was out of his mind.  Dana talked with Jim's brother, Ed, about Jim's symptoms of mania.  Ed asked Mello to give Jim some time off or to reduce his schedule.  Mello said he would consider it.

On June 23, 2009, Mello told Ed that a decision had been made that could not be changed.  Mello met with Jim and told him that he had put things in motion that could not be reversed. Mello's son, Allen Jr. who was also a company manager, came in and told Jim to get his belongings and leave.

Mello and Allen Jr. then met with Dana.  She cried and told them that she was trying to get Jim help and that she needed her job to maintain health insurance for the family.  Mello and Allen Jr. indicated that Dana's job was not in jeopardy.

After Jim was terminated, Dana's relationship with Mello changed.  In contrast to their friendly relationship and conversations for the prior fourteen years, Mello began to avoid conversation with Dana.  In July or August, Kacavas who had replaced Jim as general manager told Dana she would have to start working nights and weekends.  Dana responded by telling him that she would do whatever was necessary to keep her job.  The Dealership also hired a third sales manager and had Dana train him.  On October 2, 2009, Dana's employment was terminated.

Dana and Jim filed suit on July 5, 2011. Jim alleged claims, arising from his termination and mental illness, under New Hampshire Revised Statutes Annotated ("RSA") chapter 354-A, which prohibits discriminatory employment practices, and the Americans with Disabilities Act ("ADA"). Dana alleged a claim under the ADA, arising from her association with a person with a disability, and claims of gender discrimination under RSA 354-A:7 and Title VII of the Civil Rights Act of 1964.

## Discussion

The Dealership moves to sever Jim's and Dana's claims into separate actions, contending that the claims are improperly joined. Jim and Dana object.

When parties are misjoined in an action, the court may drop a party or sever the claims into separate actions. Fed. R. Civ. P. 21. Parties are misjoined as plaintiffs if the conditions for permissive joinder are not met. See Beaulieu v. Concord Group Ins. Co., 208 F.R.D. 478, 479 (D.N.H. 2002). Permissive joinder requires that the plaintiffs either assert a joint right to relief or allege claims "arising out of the same transaction, occurrence, or series of transactions or occurrences," and that a "question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A). As long as the

6

parties meet the test for permissive joinder, courts generally allow joinder unless other considerations such as avoiding prejudice and delay, assuring judicial economy, or safeguarding fundamental fairness counsel otherwise.  <u>Acevedo v. Allsup's Convenience Stores</u>, 600 F.3d 516, 521 (5th Cir. 2010).

The Dealership argues that Jim's and Dana's claims do not arise from the same transactions or occurrences because their claims are based on different rights and separate occurrences. The Dealership also contends that the claims do not involve common questions of law or fact.  Further, the Dealership asserts that even if the plaintiffs meet the requirements for joinder, the claims should be severed to avoid unfair prejudice to the Dealership.

A.  <u>Same Transaction or Occurrence</u>

Jim alleges that he had a disability, as recognized by state and federal law, caused by his mental illness.  He claims under RSA 354-A and the ADA that the Dealership failed to provide him with a reasonable accommodation for his disability and that his employment was terminated because of his disability.  Dana claims that the Dealership terminated her employment because of her association with Jim, a person with a disability.  She also

7

claims that the Dealership discriminated against her based on her gender.

In employment cases, a pattern or practice of discrimination by an employer can satisfy the same transaction or occurrence requirement.  <u>Acevedo</u>, 600 F.3d at 521.  Here, Jim's claims assert that the Dealership discriminated against him based on his disability.  Dana's ADA claim is based on Jim's disability, the Dealership's interpretation of Jim's disability, and the Dealership's treatment of her as a result of Jim's disability. Therefore, Dana's ADA claim arises in part from the transactions and occurrences between Jim and the Dealership that are related to his disability.  Although Dana's Title VII claim is not related to Jim's claims, the Dealership has not suggested that the Title VII claim must stand alone in a separate action.

B.  <u>Common Questions of Law or Fact</u>

The Dealership asserts that Dana's claims and Jim's claims do not arise from any common question of law or fact.  Jim and Dana argue that their ADA claims share the issues of Jim's disability.

"To state a claim of disability under Title I of the ADA, [a plaintiff must] allege[] facts showing that (1) he was disabled within the meaning of the Act; (2) he could perform the essential

8

functions of his job, with or without reasonable accommodation, and (3) the employer took adverse action against him, in whole or in part, because of his disability." <u>Roman-Oliveras v. P.R. Elec. Power Auth.</u>, --- F.3d ---, 2011 WL 3621548, at *4 (1st Cir. Aug. 18, 2011).  A person is disabled within the meaning of the ADA "if he (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment." <u>Id.</u>  To state a claim under the ADA's "association provision," a plaintiff must allege facts to show that her employer discriminated against her "based on the 'known disability of an individual with home the qualified individual is known to have a relationship or association,' 42 U.S.C. § 12112(b)(4)." <u>Oliveras-Sifre v. P.R. Dept. of Health</u>, 214 F.3d 23, 26 (1st Cir. 2000); <u>see also</u> <u>Trujillo v. PacifiCorp</u>, 524 F.3d 1149, 1154 (10th Cir. 2008).

For purposes of their ADA claims, Jim and Dana must both prove that Jim suffered from a disability under the ADA. Therefore, their ADA claims share at least one factual and legal question.

C.   <u>Severance to Prevent Unfair Prejudice</u>

The Dealership argues that it will be unfairly prejudiced at trial if Dana's claims are allowed to proceed in the same case with Jim's claims.  The Dealership contends that the evidence pertaining to Jim's claims would not be relevant to Dana's claims and would result in jury confusion and an unfair implication of "guilty by association."  To demonstrate the likelihood of prejudice, the Dealership cites <u>Cestone v. Gen. Cigar Holdings, Inc.</u>, 2002 WL 424654 (S.D.N.Y. Mar. 18, 2002).

In <u>Cestone</u>, the plaintiffs worked for the defendant cigar company in different locations and alleged claims of sexual harassment by a company employee.  <u>Id.</u> at *1-*2.  The court concluded that because the plaintiffs were employed in separate locations, were employed in different capacities, and did not know each other or about each other's harassment experiences, the circumstances favored severance.  <u>Id.</u> at *3.  In addition, the court noted that while both plaintiffs brought claims against one of the defendants, one of the plaintiffs also brought a claim against a second defendant, which raised a potential for unfair prejudice based on evidence admissible against only one of the defendants.  <u>Id.</u>

Here, Jim and Dana are husband and wife; they were both employed by the Dealership, and they shared their experiences at

10

the Dealership.  The Dealership's effort to distinguish the evidence pertinent to Jim's and Dana's claims is unpersuasive. Further, given the overlap between their disability claims, judicial economy is served by maintaining the joinder of the claims.


### Conclusion

For the foregoing reasons, the defendant's motion to sever (document no. 5) is denied.


SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

October 3, 2011

cc:  Debra Weiss Ford, Esquire
     Janie Lanza Vowles, Esquire